UNITED STATES OF AMERICA,

     Plaintiff,

v.                                  Case No. 11-20551
                                          16-10708

D-45 JAMALL GIBSON,

     Defendant.

_____/

## OPINION AND ORDER RESOLVING PENDING MOTIONS AND GRANTING A LIMITED CERTIFICATE OF APPEALABILITY

Defendant Jamall Gibson conspired to illegally obtain and distribute large quantities of pain medication. He was convicted by his plea of guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (Dkt. #1088.) Before the court are several motions from Defendant: a motion to vacate sentence under 28 U.S.C. § 2255 (Dkt. #1422), a motion requesting a copy of counsel's work related schedule (Dkt. #1424), a motion to amend the motion to vacate sentence (Dkt. #1471), a motion to order a show cause to be issued (Dkt. #1480), a motion to expand the scope of the § 2255 proceedings (Dkt. #1526), a motion to grant a prompt evidentiary hearing (Dkt. #1690), a motion to expand the scope of the record (Dkt. #1691), and a motion to grant supplemental pleadings (Dkt. #1733). Each motion is fully briefed with the exception of Defendant's motion for a copy of counsel's work schedule, to which the government has offered no response. The court has determined that a hearing for presentation of argument is unnecessary. E.D. Mich. L.R. 7.1(f)(2).

## I. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" where the prisoner claims that the "sentence was imposed in violation of the Constitution or laws of the United States." Not every asserted error of law may be raised in a § 2255 motion, however. *See Davis v. United States*, 417 U.S. 333, 346 (1974). The defendant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The defendant, to be entitled to relief, must establish "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Davis*, 417 U.S. at 346).

## II. DISCUSSION

The proceedings in this matter have been complicated by the plethora of motions and briefing submitted by both Defendant and the Government. As an initial matter, following his initial Motion to Vacate Under § 2255 (Dkt. #1422), Defendant submitted an "amended" § 2255 motion and styled it as a "Motion to Amend § 2255 Petition." (Dkt. #1471.) He clarified, in his briefing on yet another motion, that he wanted the court to "strike his original 2255 [p]leadings" and consider only those matters filed with his motion to amend. (Dkt. #1480 Pg. ID 15001.) The court will grant the motion to amend, and will consider Defendant's amended § 2255 motion as the primary motion—but the court will also consider Defendant's original § 2255 motion to the extent that it supplements the amended motion. Defendant's subsequent motions to "expand the record" and "expand the scope" of his amended motion will be considered individually as set forth below.

Though he raises several alleged errors of law, Defendant's primary argument is that he received ineffective assistance of counsel through his criminal proceedings. Claims for ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant claiming ineffective assistance must first show that his counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The defendant must also show that the deficient performance was prejudicial. Prejudice requires more than "some conceivable effect on the outcome of the proceeding"; the defendant must, instead, set forth "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Defendant has not met this burden to demonstrate that his counsel was ineffective.

### A. Failure to Investigate Prior Convictions

Primary among Defendant's claimed errors is that his counsel failed to effectively investigate two of his prior convictions, resulting in a higher-than-warranted guideline range. Specifically, Defendant argues that he had two sentences on his record—one issued under the Holmes Youthful Trainee Act, Mich. Comp. Laws § 762.11, and one that was designated for probation under Mich. Comp. Laws § 333.7411—that should not have been considered when calculating his sentencing guidelines. He says that his counsel was ineffective for failing to investigate these sentences and for failing to object to their use. (Dkt. #1471 Pg. ID 14924.) Defendant further contends that had his counsel conducted the proper investigation, he would not have pleaded guilty.

Following his amended § 2255 motion, Defendant successfully had the

complained-of convictions removed from his state court criminal record. He moves the court for the opportunity to expand the record to acknowledge the removal (Dkt. #1691) and to add to these proceedings his Michigan criminal history report (Dkt. #1733). The court will grant the motions to expand. The added information, however, is insufficient to demonstrate that Defendant's counsel was ineffective because those convictions—though now apparently removed from his record—were properly considered as part of Defendant's guideline calculations as "prior sentences."

### i. Defendant's Criminal History Calculation

Defendant's criminal history calculation was included in his Presentence Report ("PSR"). Defendant was assessed a criminal history score of five—a criminal history category of III—based on three convictions entered before he was charged with the offenses in this matter. For the first, a felony charge for receiving and concealing stolen property, Defendant was given two years of probation under the HYTA. For the second, a controlled substances charge, Defendant was given six months of probation under Mich. Comp. Laws § 333.7411. For the last, a charge for abandoning/cruelty to two or three animals, Defendant received 12 months of probation. Each conviction resulted in one point towards Defendant's criminal history computation, and Defendant was assessed an additional two points for committing the instant offense while on probation for the animal cruelty charge.[1]

---

[1] As part of his plea agreement, Defendant and the Government estimated the likely guideline range the court would use at sentencing. (*See* Dkt. #761 Pg. ID 3039–41.) The estimate contained several errors, the most significant of which was the omission of Defendant's animal cruelty conviction. Because this conviction was left off—along with the additional two points for committing an offense while on probation—the parties estimated only 2 criminal history points, resulting in a criminal history category of II and a guideline calculation of 135–168 months.

Defendant objects to the inclusion of the first two sentences, and he claims his counsel was ineffective for failing to do the same at his sentencing. Though each charge resulted in probationary sentences under different statutory provisions—one under the HYTA and one under § 333.7411—Defendant argues the same error as to both: the sentences could not properly be included because they were, under statute, eventually removed from his record following his successful completion of the probationary term.

### ii. HYTA Status and Deferred Proceedings Under § 333.7411

Relevant here, the HYTA provides that "if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-fourth birthday, the court of record having jurisdiction of the criminal offense may, *without entering a judgment of conviction* and with the consent of that individual, consider and assign that individual to the status of youthful trainee." Mich. Comp. Laws § 762.11(1) (emphasis added). If youthful trainee status is not terminated and has not been revoked, "upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings." § 762.14(1).

Similarly, § 333.7411 permits deferred proceedings in certain controlled substances cases. The terms of the statute require that the defendant "plead[] guilty to

---

Defendant does not claim error for the miscalculation on his plea agreement. Nor could he do so credibly; his plea agreement included a provision that "[i]f the Court finds: a) that defendant's criminal history category is higher than reflected on the attached worksheets, . . . and if any such finding results in a range higher than 135–168 months, the higher guideline range becomes the range recommended by defendant and the government." (Dkt. #761 Pg. ID 3029.) Rather, Defendant claims error as to his counsel's failure to object to the inclusion of his sentences under the HYTA and § 333.7411 in the PSR.

or [be] found guilty" of one of the enumerated controlled substances charges; the court may then, "without entering a judgment of guilt with the consent of the accused, . . . defer further proceedings and place the individual on probation upon terms and conditions" set forth in the statute. § 333.7411(1). If the defendant fulfills all the terms and conditions, the court "shall discharge the individual and dismiss the proceedings." *Id.* Important here, the statute also provides that "[d]ischarge and dismissal under this section shall be without adjudication of guilt and, except as otherwise provided by law, is not a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." *Id.*

Defendant avers that he successfully completed the probationary terms imposed under these statutes and has—in the time since he was sentenced in this case—had them removed from his official criminal record. He argues that his counsel was ineffective for failing to get them discharged from his record and for failing to prevent their inclusion in the PSR. The Government, for its part, does not contend that these sentences were not properly removed from Defendant's criminal record; it argues, rather, that they were nonetheless correctly included in Defendant's PSR, and Defendant's counsel could not have been ineffective for failing to object to them.

### iii. U.S.S.G. § 4A1.2

Computation of criminal history for the purposes of sentencing is governed by U.S.S.G. § 4A1.2. Relevant here, the sentencing guidelines provide that "[d]iversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted." § 4A1.2(f). Where a diversionary sentence results from a "finding or admission of guilt," however, the "judicial proceeding is counted as a sentence . . . *even*

*if a conviction is not formally entered.*" *Id.* (emphasis added). The comments clarify: "Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court. This reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." § 4A1.2 cmt.9.

Therein lies the rub: though the charges Defendant complains of were apparently removed from his record, his probationary sentences under the HYTA and § 333.7411 required an admission of guilt. *See* Mich. Comp. Laws § 762.11 (providing that an individual may receive youthful trainee status "if [the] individual pleads guilty to a criminal offense"); Mich. Comp. Laws § 333.7411 (providing for a probationary sentence if "an individual who has not been previously convicted of [certain offenses] pleads guilty to or is found guilty of" enumerated controlled substances charges). Defendant's argument that these charges have been removed from his record (therefore restoring, he says, the presumption that he is innocent) is both irrelevant and factually inaccurate. (*See* Dkt. #1733 Pg. ID 17501.) Defendant was required to plead guilty to the charges that were eventually taken off his record, and they were properly counted in his criminal history calculation under the sentencing guidelines.

The case law is in accord. In *United States v. Hawkins*, the Sixth Circuit affirmed the lower court's determination that—for the purposes of a statute making it unlawful "for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm or ammunition"—a probationary sentence under § 333.7411 qualifies as a "conviction." 69 F.2d 169, 172–73 (6th Cir. 1992). That court reasoned that, under Michigan law, a

conviction occurs on the "*finding* of guilt." *Id.* at 173 (emphasis original) (quoting *People v. Preuss*, 461 N.W.2d 703, 711 (Mich 1990)). The Sixth Circuit concluded: "It appears, therefore, that in Michigan, for purposes of statutes imposing penalties based in part on prior convictions, a person is deemed 'convicted' upon a finding of guilt." *Id.* Because § 333.7411 requires an individual to plead guilty or be found guilty of specified drug crimes, a probationary sentence under this statute could properly be counted as a conviction. *Id.* And the Sixth Circuit has specifically addressed the issue of sentences under the HYTA when it comes to the sentencing guidelines: because the removal of "youthful trainee" status under the HYTA "has no bearing upon the legal basis for the adjudication of [the defendant's] guilt," the conviction cannot properly be considered "expunged" under the guidelines and "must be counted." *United States v. Shor*, 549 F.3d 1075, 1078 (6th Cir. 2008).[2]

Defendant points the court to *United States v. LeBlanc*, 612 F.2d 1012 (6th Cir. 1980), which he says—as a prior Sixth Circuit opinion that has not been overturned—is controlling over *Hawkins* and *Shor*. But *LeBlanc* dealt with a probationary sentence under the HYTA as it related for Federal Rule of Evidence 609—a rule of evidence that permits, in some circumstances, witnesses at trial to be impeached by evidence of their prior convictions. *Id.* at 1013. It did not deal with the effect of a HYTA probationary sentence on statutes or guidelines providing for increased penalties for prior sentences.

---

[2] The court recognizes that its ability to count a prior sentence under § 333.7411 has not been as clearly stated by the Sixth Circuit as its ability to count a prior sentence under the HYTA. But even if the court should not have counted the § 333.7411 sentence, the court is doubtful that counsel's failure to raise such a questionable argument, in light of the case law and the language of the guidelines, would amount to ineffective assistance. The court will, however, grant a certificate of appealability on this issue, as noted below.

And significantly for our purposes, there was no acknowledgement in *LeBlanc* that a condition of the defendant's HYTA status was his admission of guilt. *Id.* (quoting the hearing transcript and noting defense counsel's statement that "I don't think from this rap sheet the government can say that a guilty plea was tendered to the court that accepted this Y.T.A. status"). *LeBlanc* in no way disturbs the court's conclusion that Defendant's HYTA and § 333.7411 sentences were properly considered "prior sentences" under U.S.S.G. § 4A1.2 for the purposes of calculating his criminal history.

### *iv. Counsel's Performance*

Because there was no basis for Defendant's counsel to object to the inclusion of these sentences, she was not ineffective for failing to raise them. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984).

### B. Failure to Object to Enhancement for Supervisory Role

Defendant also challenges his sentence on the basis of his counsel's failure to object to an upward adjustment for his role as a "manager or supervisor (but not an organizer or leader)" in the criminal activity. *See* U.S.S.G. § 3B1.1(b). He says that there was an insufficient factual basis to warrant the adjustment, and his counsel should have objected to its use.

The court need look no further than Defendant's own statements during his plea hearing—statements to which Defendant is bound, *see Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)—to conclude that there was a sufficient factual basis to warrant the adjustment. The following colloquy occurred as part of Defendant's plea:

> THE COURT: And what was the essential kind of responsibility you had in assisting in this conspiracy?

> THE DEFENDANT: I agreed with others to obtain OxyContin to

distribute.

THE COURT: Okay. So what kinds of things did you do in agreement with these other people? There are, for example, "patient parties" that are mentioned in the factual statement here. Did you assist in organizing patient parties at this house or that house for doctors, or so-called doctors to come in and write prescriptions, for example?

THE DEFENDANT: Yes. I recruited patients or whatever.

THE COURT: You recruited patients?

THE DEFENDANT: Yeah.

THE COURT: And organized them to come in. And they needed certain paperwork. They needed what, medical insurance, identification, things like that?

THE DEFENDANT: Just the red, white and blue card.

THE COURT: That's a Medicare, a Medicare or Medicaid card, right?

THE DEFENDANT: Yes.

THE COURT: So then a doctor, or somebody purporting to be a doctor would come in and write dozens of prescriptions for large quantities of drugs; is that right?

THE DEFENDANT: Yes, sir.

(Dkt. #1470 Pg. ID 14896–97.) The court continued, and expressly addressed the

upward adjustment with Defendant:

THE COURT: A part of the calculations in the guidelines here are that, are that Mr. Gibson supervised people, that would be specifically supervising patients. Is that -- you were recruiting them, you would make arrangements perhaps, Mr. Gibson, to get them to the location?

THE DEFENDANT: Yes, sir.

THE COURT: Like driving them or?

THE DEFENDANT: Yes, sir.

THE COURT: Pick them up, drive them, take them home, that sort of thing?

THE DEFENDANT: Yes, sir.

THE COURT: And then, and then how would the prescriptions be filled? What was your role in doing that? Would you take -- for example, would you simply take charge of the prescriptions and go get them filled or, would you accompany these people to go stand in line at the pharmacy?

THE DEFENDANT: It was more like accompany them.

THE COURT: More like accompanying them. Watch over them, but then get the pills --

THE DEFENDANT: Yes, sir.

THE COURT: -- when they were acquired, right?

(Dkt. #1470 Pg. ID 14901.) From Defendant's explanation of his role, the court properly concluded that, in recruiting patients and organizing their appearance at "parties" where doctors could write faulty prescriptions, Defendant was a "manager or supervisor (but not an organizer or leader)" in the conspiracy such that an upward adjustment was warranted.

Defendant acknowledges the first portion of the colloquy—indeed, he reprints it in his motion—but resists the court's determination that the adjustment was appropriate. He argues that, under the factors set forth in *United States v. Solorio*, 337 F.3d 580 (6th Cir. 2003), there was insufficient evidence of a supervisory role; those factors include: "the defendant's exercise of decision-making authority, any recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning the offense, and the degree of control the defendant exercised over others." *Solorio*, 337 F.3d at 601 (quoting *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir.

2003)). Defendant avers that there was no evidence that he had decision-making authority, that he claimed a larger share of the fruits of the crime, that he planned or organized the offense, or that he controlled any other person. (Dkt. #1471 Pg. ID 14929.) But none of these factors is dispositive—they are part of a balancing test in which each is weighed. By admitting that he recruited individuals to participate in "patient parties" for the purpose of obtaining illegal prescription medications, Defendant acknowledged a higher degree of participation in planning the offense. He similarly acknowledged that he recruited accomplices and supervised them during the commission of the scheme. This was enough to establish Defendant's role as a manager or supervisor for the purpose of an upward guideline adjustment, and Defendant has not shown any prejudice resulting from his counsel's failure to object.

### C. Failure to Inform Defendant of His Speedy Trial Rights

Defendant's final argument in his amended motion is that his counsel failed to inform him of his rights under the Speedy Trial Act, and was further ineffective for failing to file a motion to dismiss the indictment after 70 days had elapsed without a trial. (Dkt. #1471 Pg. ID 14930.) According to Defendant, had he known of his speedy trial rights, he would have instructed his counsel to file a motion to dismiss the indictment 70 days after the indictment was filed. Because Defendant has shown no prejudice from his counsel's failure to object under the Speedy Trial Act, Defendant is not entitled to relief on this ground.

The Speedy Trial Act requires that "the trial of a defendant charged in an information or indictment with the commission of an offense *shall commence within seventy days* from the filing date (and making public) of the information or indictment, or

from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1) (emphasis added). The 70-day time period is tolled, however, where the court grants a continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A). Relevant here, in deciding whether to grant such a continuance, the court may consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." § 3161(h)(7)(B)(ii).

The second superseding indictment in this case was made public—and Defendant appeared before a Magistrate Judge—on March 20, 2013; he was one of 44 Defendants named in the indictment. At an on-the-record status conference just over two months later—on May, 22, 2013—the court confirmed that it would be designating the case as complex for Speedy Trial Act purposes. It memorialized the designation by written order dated August 22, 2013. The court reiterated that "the period of time between May 22, 2013, until the new trial date [May 6, 2014], is determined to be excludable delay within the meaning of 18 U.S.C. § 3161, based on the interests of justice and other matters concerning the defendants, for the reasons set forth in the Government's Motion, which are adopted and incorporated in this Order." (Dkt. #593 Pg. ID 1980.) The government's motion, as incorporated in the court's order, elaborated: "This case is both unusual and complex, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii), in that it involves a federal wiretap and voluminous discovery, as well

as other complicated matters, including search and seizure issues and potential expert witnesses regarding medical issues that present difficult legal and factual issues." (Dkt. #590 Pg. ID 1971.) The motion further explained that "[f]ailure to grant the requested continuance would result in a miscarriage of justice within the meaning of 18 U.S.C. § 3161(h)(7), in that adequate time for making an informed decision as to whether to plead guilty and to prepare for trial could not exist within the ordinary time limits," and the period from May 22, 2013 to the trial date was excludable delay because "the interests of justice in granting this adjournment outweigh the best interests of the defendants and the public in a speedy trial." (*Id.* at Pg. ID 1971–72.)

On the scheduled trial date, Defendant and the government once more stipulated—and the court ordered—that "the ends of justice outweigh[ed] the best interests of the public and the defendants in a speedy trial." (Dkt. #730.) The parties explained that the case and number of defendants was complex, the first group of defendants in the case had pleaded guilty, and more time was needed to review discovery materials. A new trial date was set for June 25, 2014; Defendant pleaded guilty on June 23, 2014. (*See* Dkt. #761.)

Defendant has not shown that his counsel was ineffective for failing to object under the Speedy Trial Act. The time between May 22, 2013 and May 6, 2014 was deemed "excludable delay." Even if counsel had brought a motion to dismiss the case under the Speedy Trial Act during that time period, the motion would have been meritless because the time to bring Defendant to trial had not elapsed. So, too, was the time between May 6, 2014 and June 25, 2014 designated as excludable delay by stipulation of the parties and order of the court. Counsel's decision to stipulate to the

extended trial date was well within the bounds of professionally-reasonable decisions. As explained in the stipulation and order, more time was needed for counsel to review the relevant discovery materials and enter into informed plea negotiations. The court cannot agree that counsel's failure to object under the Speedy Trial Act amounted to ineffective assistance of counsel.

### D. Inadequate Pre-Plea Investigation

In his initial motion, which the court considers a supplement to his amended § 2255 motion, Defendant asserted that his counsel was ineffective for failing to adequately prepare for proceedings in his case. (Dkt. #1422 Pg. ID 11533–38.) But other than some vague allegations that his minimal interactions with his counsel meant that he was not truly informed when he pleaded guilty, Defendant fails to set forth what preparation counsel failed to do—and how that failure prejudiced him so significantly that his plea was not knowing and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970). Defendant must do more to establish ineffective assistance of counsel than assert that his counsel did not meet with him as often or for as long as he would have preferred. And in any event, his present claim that he was uninformed about the nature and consequences of his plea—and that his counsel had failed to explain that plea to him—are belied by his statements made under oath at the plea hearing:

> THE COURT: Have you talked about this case thoroughly with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you confident you understand your attorney's advice?
>
> THE DEFENDANT: Yes, sir.

THE COURT: And you think she understands the case against you as well, I trust?

THE DEFENDANT: Yes, sir.

THE COURT: You've listened carefully to her advice, and thought about it, I hope, in making this decision to plead guilty. Have you?

THE DEFENDANT: Yes, sir.

THE COURT: The decision to plead guilty has to be on your shoulders. This is not something an attorney is permitted to decide for you. I expect her to advise you, to talk with you, to answer your questions, to give you the information necessary to make a sound decision, but that decision must be yours. Do you understand, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is that what's going on here, sir? This is your decision?

THE DEFENDANT: Yes.

THE COURT: It's what you want to do, right?

THE DEFENDANT: Yes, sir.

THE COURT: And you are making this decision also because, I hope, because you actually are guilty of what you intend to admit here today; is that true, sir?

THE DEFENDANT: Yes, sir.

(Dkt. #1470 Pg. ID 14883–84.) Defendant has not shown that his counsel was ineffective for failing to adequately prepare for his proceedings.

### E. Failure to Object to Drug Amounts Attributable to Defendant

Also raised in Defendant's initial—but not amended—motion is a claim that his counsel was ineffective for failing to object to the drug amounts the court attributed to him for the purposes of sentencing. According to Defendant, his plea agreement did not include any description of how the base offense level was calculated with reference to

the drug amounts involved in the criminal conspiracy; his counsel was therefore ineffective for failing to object when those drug amounts were used at sentencing to set Defendant's offense level. He further claims that his counsel's failure "rais[es] a question as to whether the non-disclosure of these elements and facts impacted the voluntariness of the plea." (Dkt. #1422 Pg. ID 11540.)

"At sentencing, the government bears the burden of proving the amount of drugs by a preponderance of the evidence." *United States v. Treadway*, 328 F.3d 878, 884 (6th Cir. 2003). The court had no trouble concluding that the government met that burden in this case. For one—contrary to Defendant's contention—his plea agreement did reference an attached estimate of the quantity of drugs involved. (*See* Dkt. #761 Pg. ID 3037.) More significantly, Defendant's PSR detailed the ample evidence of the drug quantities at issue in this case; it noted that the physicians involved in the scheme prescribed a combined total of more 500,000 dosage units of 80 milligram OxyContin tablets, while the doctors named in the second superseding indictment prescribed over two million dosage units of Vicodin, over one million dosage units of Xanax, and more than 1,000 liters of cough syrup with codeine. The court properly considered this evidence "to determine the facts relevant to sentencing." *United States v. Kemper*, 908 F.2d 33, 37 (6th Cir. 1990). Given the overwhelming evidence of drug quantities involved in this case, Defendant has not shown that he was prejudiced by his counsel's failure to object to those quantities at sentencing.

### F. Failure to Inform Defendant that His Plea Resulted in a Waiver of His Right to Seek a Sentence Reduction

As part of his plea, Defendant waived his right to move for a reduction in his sentence based on amendments to the U.S. Sentencing Guidelines; Defendant's initial

§ 2255 motion argued that his counsel was ineffective because she never explained to him the "gravity" of that waiver. (Dkt. #1422 Pg. ID 11547–48.)

Curiously, Defendant acknowledges that the court went over the waiver with him at his plea hearing:

> [THE GOVERNMENT]: . . . The defendant is also giving up 18 USC 3582 right to be re-sentenced if his sentence is based on a guideline range that's subsequently lower. And those are the salient terms of the Rule 11 plea agreement.
>
> THE COURT: That last is an important point, Mr. Gibson. There, there may be a change that is enacted by Congress in the guideline calculations. It may occur actually before your sentencing in this case. And if the guideline range calculations change as predicted, then it will [a]ffect and perhaps lower your guideline range calculations. But whatever happens in that regard, and whatever your sentence happens to be in this particular case, you are, as a consequence of this negotiation with the Government, giving up any right that you otherwise would have under the law to come back to the Court and to try to get your sentencing range lowered and your sentence re-imposed at a lower level based upon later adjustments in the sentencing guideline range.
> Do you understand that, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: . . . But the main point here is that you're giving up permanently as a consequence of this arrangement with the Government your, whatever right you would have perhaps in the future to try to come back and get your sentencing range reassessed and perhaps the sentence lowered.
> Do you understand, sir?
>
> THE DEFENDANT: Yes, sir.

(Dkt. #1470 Pg. ID 14894–95.) Despite the court's colloquy with Defendant, he claims that he "did not fully comprehend the nature of the waiver" because his counsel did not "adequately explain the impact of the waiver decision." (Dkt. #1422 Pg. ID 11547.) The argument is without merit. Even assuming that counsel did not explain the nature of the waiver, the failure was not so prejudicial as to amount to "an error of constitutional

magnitude which had a substantial and injurious effect or influence on [his] guilty plea." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The court adequately explained to Defendant the nature and scope of the waiver. That he now claims that he would not have pleaded guilty if he had been better informed of the waiver is both unsupported and contradicted by the record.

## G. Evidentiary Hearing

Defendant requests an evidentiary hearing so that he can further explain his claims for ineffective assistance. (Dkt. #1690.) Where a factual dispute arises in a motion under § 2255, the district court must hold an evidentiary hearing. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). A defendant has only a "relatively light" burden to show that an evidentiary hearing is warranted. *Id.* But the court need not conduct a hearing where "the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). No hearing is required, in other words, where the defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotation omitted).

Defendant has not met his burden to show that his case merits an evidentiary hearing. None of his claims hinge on factual disputes that could be properly decided only with the benefit of an evidentiary hearing. Rather, as noted above, Defendant has presented claims that are either contradicted by his sworn statements during his plea hearing or without a legal basis. And Defendant has given the court no reason to discredit Defendant's own statements during his plea. Because "the record conclusively

shows" that Defendant's claims are without merit, he is not entitled to an evidentiary hearing, and this motion is properly denied. *Id.*

## H. Record-Related Motions

In addition to his motion to vacate and to supplement his motion to vacate, Defendant has filed a number of requests aimed at expanding the record in this matter. First, he asks to be provided with a copy of the schedule of fees his counsel submitted for reimbursement under the Criminal Justice Act, 18 U.S.C. § 3006A. (Dkt. #1424.) Now that judgment has been entered without a direct appeal, and the court having determined that none of the relevant factors warrant limiting disclosure in this matter, Defendant is entitled to a copy of his counsel's payment voucher. *See* Guide to Judiciary Policy, Vol. 7 Pt. A, § 520.50.[3] This motion will be granted.

He also asks that "scope" of these proceedings be expanded. (Dkt. #1526.) Specifically, after Defendant's initial § 2255 motion, the government filed a response, attaching an affidavit from Defendant's former counsel in support. (Dkt. #1477-2.) Defendant asks that his counsel be ordered to provide a more detailed and thorough affidavit, arguing that the one submitted was vague and conclusory. The motion will be denied. The court did not consider Defendant's counsel's affidavit because there was no factual dispute warranting its submission in this case. If there had been a factual dispute for which counsel's testimony would have been necessary, the court would have ordered an evidentiary hearing. Because counsel's affidavit was immaterial, in other words, it was not considered, and no more specific affidavit is warranted.

Finally, Defendant moves for the court to issue a "show cause" order to the

---

[3] Available at http://www.uscourts.gov/sites/default/files/vol07a-ch05.pdf.

government, requiring the government's response to his initial and amended § 2255 motions. (Dkt. #1480.) The government having already responded to both motions (*see* Dkt. ##1478, 1491), Defendant's motion will be terminated as moot.

## III. CERTIFICATE OF APPEALABILITY

To appeal the court's decision, Defendant must obtain a certificate of appealability. Obtaining a certificate of appealability requires the defendant to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The applicant is required to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). To qualify as "debatable" does not require that some jurists would agree with the defendant's position; "[i]ndeed, a claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). A federal district court is empowered to decide whether to issue a certificate of appealability when it denies relief under § 2255. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, given the language of Mich. Comp. Laws § 333.7411, reasonable jurists could debate whether Defendant's probationary sentence under § 333.7411 could properly count as a "prior sentence" under U.S.S.G. § 4A1.2, and whether his counsel was ineffective for failing to object to its use in calculating the guideline range. The court finds that Defendant, on this score, has not made a persuasive showing of the denial of

a constitutional right—but he has made a showing that is not frivolous. The court will therefore issue a certificate of appealability as to that issue alone. But jurists of reason would not debate the court's analysis with respect to any of Defendant's remaining claims because those claims are without merit. The court, therefore, will deny a certificate of appealability as to all other issues.

## IV. CONCLUSION

Defendant has not shown "an error of constitutional magnitude which had a substantial and injurious effect or influence on [his] guilty plea." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Defendant's motion must therefore be denied. Accordingly,

IT IS ORDERED that Defendant's Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Dkt. #1422) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion Requesting a Copy of Counsel's Work Related Schedule (Dkt. #1424) is GRANTED. The Clerk of the court will mail to Defendant a copy of his counsel's submitted schedule of fees.

IT IS FURTHER ORDERED that Defendant's Motion to Amend the Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Dkt. #1471) is GRANTED to the extent that the court will permit the amendment and DENIED to the extent Defendant moves to vacate his sentence.

IT IS FURTHER ORDERED that Defendant's Motion to Order Show Cause to Be Issued Requiring Government's Response (Dkt. #1480) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's Motion to Expand the Scope of § 2255 Proceedings (Dkt. #1526) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Grant Prompt Evidentiary Hearing (Dkt. #1690) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Expand the Scope of the Record (Dkt. #1691) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Grant Supplemental Pleadings (Dkt. #1733) is GRANTED.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED as to the following issue: Whether Defendant's probationary sentence under § 333.7411 could properly count as a "prior sentence" under U.S.S.G. § 4A1.2, and whether his counsel was ineffective for failing to object to its use in calculating the sentencing guideline range.

s/Robert H. Cleland        /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 6, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 6, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner         /
Case Manager and Deputy Clerk
(810) 292-6522

Z:\Cleland\KNP\2255\11-20551-45.GIBSON.Deny.2255.Related.Motions.KNP.docx