**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Case No. 11-20551

JAMALL GIBSON,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO REDUCE SENTENCE**

Defendant Jamall Gibson pleaded guilty to conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), (b)(1)(C). (ECF No. 1088, PageID.5963.) On May 8, 2015, the court sentenced him to 151 months imprisonment. (*Id.*, PageID.5964.) His projected date of release, assuming good behavior, is in April 2026. (ECF No. 1898-2, PageID.19428.)

Defendant moves to reduce his sentence. (ECF No. 1875.) He argues that the health risks presented by the Coronavirus Disease ("COVID-19") while incarcerated at FCI Milan justify his immediate release. The government has filed a response and Defendant has replied. (ECF Nos. 1898, 1908.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). Defendant's motion will be denied.

Under the federal compassionate release statute, the court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors

provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

A motion requesting a prisoner's compassionate release may be filed either by the Bureau of Prisons ("BOP") or by the prisoner himself. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit held recently in *United States v. Jones*, 980 F.3d 1098, 1110-11 (6th Cir. 2020), that when a prisoner moves for compassionate release himself there is no "applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, the requirement in § 3582(c)(1)(A) that a sentence reduction be "consistent with [a] policy statement[]" does not apply to compassionate release analysis, and courts are to ignore it. *Jones*, 980 F.3d at 1111. A prisoner seeking compassionate release must nevertheless present "extraordinary and compelling" circumstances and must have § 3553(a)'s sentencing factors that weigh in his favor. 18 U.S.C. § 3582(c)(1)(A); *see Jones*, 980 F.3d at 1108, 1111 (holding that a court has "full discretion to define 'extraordinary and compelling'" and must also "determine whether, in its discretion, [a] reduction . . . is warranted" under § 3553(a)).

The government argues that Defendant did not fully exhaust administrative remedies. (ECF No. 1898, PageID.19411-12.) Before the court may consider a motion for compassionate release, Defendant must exhaust remedies at the BOP. *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (quotation removed) ("When properly invoked, mandatory claim-processing rules must be enforced."). Under § 3582(c)(1)(A), Defendant may seek compassionate release himself only if he submits a request for compassionate release to his warden and he has "fully exhausted all administrative

2

rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier."

Defendant submitted a request for relief with the warden of his facility, but he asserted only his diabetes diagnosis, in conjunction with COVID-19, as the basis for relief. (ECF No. 1898-3, PageID.19431.) Defendant now argues his diagnoses for diabetes and obesity justify release. (ECF No. 1875, PageID.18702.) The government does not deny that Defendant, at least to an extent, exhausted administrative remedies. (ECF No. 1898, PageID.19407, Government Response (emphasis added) ("[Defendant] did not *completely* exhaust.").) The government instead contends that a portion of Defendant's allegedly extraordinary and compelling circumstances were not properly exhausted. (*Id.*) The court will assume for purposes of Defendant's motion that he has presented extraordinary and compelling circumstances. *See* 18 U.S.C. § 3582(c)(1)(A). The issue of whether Defendant exhausted remedies with regard to one of his allegedly compelling circumstances is not outcome determinative, and the court will refrain from deciding the issue.

Upon a review of § 3553(a) sentencing factors, the court concludes early release is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A). Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

3

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established . . .

(5) any pertinent policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming a district court's denial of compassionate release after consideration of § 3553(a) sentencing factors); *see also United States v. Allen*, 819 F. App'x 418, 418 (quotation removed) ("In a compassionate release proceeding, as at sentencing, the district court is best situated to balance the § 3553(a) factors."). "[A] defendant's disagreement with how the district court balanced the § 3553(a) factors in denying compassionate release is not a sufficient ground for reversal." *United States v. Austin*, 825 F. App'x 324, 327 (6th Cir. 2020) (quotations removed).

**"[T]he nature and circumstances of the offense and the history and characteristics of the defendant."** 18 U.S.C. § 3553(a)(1). Although he is relatively young (currently thirty-seven years old), Defendant has a concerning criminal history. In 2005, at the age of nineteen, he was convicted of felony stolen property. (ECF No. 761, PageID.3040; ECF No. 1253, PageID.9856.) He knowingly possessed and drove a

4

stolen car. (ECF No. 761, PageID.3040; ECF No. 1253, PageID.9856.) This conviction at a young age did not dissuade Defendant from engaging in criminal activity. Instead, he began working with family members to develop a sophisticated drug trafficking organization.

In 2006, at the age of twenty-three, Defendant was apprehended by police while carrying $900. (ECF No. 1253, PageID.9853.) The car he was driving with his father-in-law contained around 550 illegal opioid pills. (*Id.*) Defendant pleaded guilty to a reduced charge of "use" of a controlled substance, but the underlying facts demonstrate his involvement in illegal opioid distribution. (*Id.*; ECF No. 761, PageID.3040; ECF No. 1898, PageID.19394.)

In 2009, Defendant was convicted of animal cruelty. (ECF No. 1056, PageID.5350; ECF No. 1253, PageID.9857, 9850-51.) He left several dogs locked in a house; he provided no care, maintenance, or water. (ECF No. 1253, PageID.9857, 9850-51.) Police eventually entered the house and found the dogs emaciated, with worms and fleas. One dog died of dehydration. (*Id.*, PageID.9857.)

Defendant has on numerous occasions also neglected his obligation to make court appearances after being arrested and charged with minor offenses. (ECF No. 1253, PageID.9857-58.) Defendant on three separate occasions was apprehended driving with a suspended license only to fail to appear before court, necessitating arrest warrants. (*Id.*)

Starting at the latest in December 2009, Defendant began working with his father-in-law to again distribute drugs. (ECF No. 761, PageID.3028.) Despite prior felony convictions and being on probation for committing a similar drug crime,

5

Defendant worked with family members to establish an opioid trafficking ring in Detroit. (*Id.*; ECF No. 1056, PageID.5345-46; ECF No. 1253, PageID.9854.) The criminal scheme was extensive and sophisticated. Defendant helped recruit and transport homeless and other destitute individuals to doctors and pharmacies. (ECF No. 1056, PageID.5345; ECF No. 1253, PageID.9854.) The recruited "patients" would then request and receive medically unnecessary opioid prescriptions, defrauding government healthcare programs for the needy and elderly. (ECF No. 1898, PageID.19394; ECF No. 1056, PageID.5345; ECF No. 1253, PageID.9854.) The illicit drugs were then trafficked to marginal communities such as Portsmouth, Ohio, fueling the spread of opioid addiction. (ECF No. 1898, PageID.19394; ECF No. 1056, PageID.5345; ECF No. 1253, PageID.9854.)

Much of Defendant's adult life has been spent engaged in criminal enterprises. He has worked to distribute powerful and addictive narcotics across state lines, undermining public health and safety. Defendant's flagrant disrespect for the law is shown outside of the drug distribution context. His felonies for knowingly driving a stolen car and abandoning animals to die were serious and, as to the animal cruelty charge, reprehensible. Defendant has shown a willingness to repeatedly ignore court orders to appear. Having served only sixty-six months of his 151-month sentence, the criminal history of Defendant and the nature of his instant offense weigh strongly against early release. 18 U.S.C. § 3553(a)(1); 18 U.S.C. § 3582(c)(1)(A). (ECF No. 1088, PageID.5964; ECF No. 1898-2, PageID.19430.)

**"[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the**

6

**offense."** 18 U.S.C. § 3553(a)(2)(A). Defendant has multiple felony convictions and was involved in large scale drug distribution as recently as 2012. He received leniency for his past criminal behavior. His 2006 drug trafficking was reduced to a lower charge, and he has repeatedly received probationary sentences in lieu of jail time. (ECF No. 761, PageID.3040; ECF No. 1253, PageID.9856-57.) Despite this treatment, Defendant has continued to break the law and blatantly violate conditions of probation. An early release reducing the sentence by more than five years would not adequately reflect the seriousness of Defendant's criminal conduct. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). Nor would it promote respect for the law, an attitude noticeably lacking in Defendant's past behaviors. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). Finally, early release would not afford just punishment for Defendant's serial lawbreaking. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."** 18 U.S.C. § 3553(a)(2)(B). Defendant has been convicted, and punished, for several serious offenses. Prior convictions have not stopped Defendant from engaging in additional criminal activity. Upon placement on court-ordered supervision, Defendant has returned to his old habits and criminal behaviors. The court does not believe that reducing Defendant's sentence by over five years would afford adequate deterrence, either for Defendant or for others who may consider replicating his actions. 18 U.S.C. § 3553(a)(2)(B); 18 U.S.C. § 3582(c)(1)(A). Defendant is young and, hopefully, will have a long life after release. The court believes his 151-month sentence will better ensure that he does not return to the criminal justice system. If he

7

were to re-offend in a way similar to the facts underlying this case, he may find himself facing even lengthier time in custody.[1]

**"[T]he need for the sentence imposed . . . to protect the public from further crimes of the defendant."** 18 U.S.C. § 3553(a)(2)(C). Defendant has shown himself willing and able to engage in complex and dangerous criminal activities, despite having prior convictions and despite the presence of probation conditions. He committed the instant offense while on probation for very similar criminal behavior. The court believes that if Defendant is released at this time, there is a real possibility that he may commit more crimes, specifically by trafficking drugs. Distribution of illegal narcotics continues to present a significant risk to community health, especially to marginal communities like Portsmouth, Ohio. Defendant's immediate release would not adequately ensure the protection of the public. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he sentencing range established."** 18 U.S.C. § 3553(a)(4). When Defendant was sentenced, the advisory guideline range was 151 to 188 months imprisonment. (ECF No. 1253, PageID.9846-47.) The court sentenced him to 151 months imprisonment, (ECF No. 1088, PageID.5964), the lowest within-guideline sentence available. If Defendant were to be released now, his total term of imprisonment would have been be sixty-six months, (ECF No. 1898-2, PageID.19430),

---

[1] The court notes that on April 9, 2020, the U.S. Sentencing Commission issued a detailed report on incarceration and recidivism. United States Sentencing Commission, *Length of Incarceration and Recidivism* (2020). Analyzing data on thousands of federal prisoners, the Commission "consistently found that incarceration lengths of more than 120 months had a deterrent effect" while incarceration of 60 to 120 months had a reduced deterrent effect; incarceration of 60 months or less provided little to no deterrence. *Id.* at 4. Given that Defendant has served 66 months in prison, this study bolsters the court's finding that its original sentence would more likely provide deterrence from further crime, and that the early release as proposed would not.

substantially below the lower bound of the advisory guideline range. The established sentencing range weighs strongly against Defendant's immediate release. 18 U.S.C. § 3553(a)(4); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."** 18 U.S.C. § 3553(a)(2)(D). Defendant has received diagnoses for type II diabetes and obesity. (ECF No. 1899-2, PageID.19503.) Both are common and treatable conditions. Of American adults, 42% are obese and 32% are overweight. *Prevalence of Obesity and Severe Obesity Among Adults: United States, 2017-2018*, Centers for Disease Control and Prevention, https://www.cdc.gov/nchs/products/databriefs/db360.htm (last visited Jan. 5, 2021); *See Obesity and Overweight*, Centers for Disease Control and Prevention, https://www.cdc.gov/nchs/fastats/obesity-overweight.htm (last visited Jan. 5, 2021). With monitoring and effective lifestyle changes, high body mass index ("BMI") can be improved, if not fully treated. *See Obesity*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/obesity/symptoms-causes/syc-20375742 (last visited Jan. 5, 2021) ("The good news is that even modest weight loss can improve or prevent the health problems associated with obesity."); *Obesity: Treatments*, Stanford Health Care, https://stanfordhealthcare.org/medical-conditions/healthy-living/obesity/treatments.html (last visited Jan. 5, 2021) ("The best way to lose weight is to eat less and move more.").

Of American adults, 13%, or 34.1 million individuals, have diabetes. Centers for Disease Control and Prevention, *National Diabetes Statistics Report 2020: Estimates of*

*Diabetes and Its Burden in the United States* 2 (2020). With proper monitoring and improved diet, exercise, and medication, diabetes can be managed and controlled. *Preventing and Treating Diabetes*, American Heart Association, https://www.heart.org/en/health-topics/diabetes/prevention--treatment-of-diabetes (last visited Jan. 5, 2021) ("Diabetes can be successfully managed."); *Managing Diabetes*, National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/diabetes/overview/managing-diabetes (last visited Jan. 5, 2021) ("You can manage your diabetes and live a long and healthy life by taking care of yourself each day.").

While in prison, Defendant receives proper monitoring and treatment for his medical conditions. The BOP provides him diagnoses, checkups, and prescriptions. (*See, e.g.*, ECF No. 1899-2, PageID.19496-98, 19503.) For many years prior to incarceration, Defendant was involved in dangerous criminal activity. He facilitated distribution of illegal opioids during the years immediately predating the instant conviction. Possessing drugs and the currency procured from drug transactions, including through kickbacks to "patients" without need of opioid prescriptions, poses serious risks of violence and bodily harm. While in prison, Defendant is separated from his prior lifestyle. In conjunction with the medical services the federal prison system provides him, continued incarceration supports Defendant's health and wellbeing. 18 U.S.C. § 3553(a)(2)(D); 18 U.S.C. § 3582(c)(1)(A).

The existence of COVID-19 by itself does not justify Defendant's release. The BOP has taken countermeasures to mitigate the spread of COVID-19. All newly arriving inmates are tested and placed in quarantine. *BOP Implementing Modified Operations*,

Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 5, 2021). Prisoners cannot leave quarantine until they test negative. *Id.* Symptomatic inmates are isolated, tested, and treated. *Id.*; Federal Bureau of Prisons, U.S. Department of Justice, *Correcting Myths and Misinformation About BOP and COVID-19* (2020). The location of Defendant's confinement, FCI Milan, has thirty-two active cases of COVID-19 among prisoners. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 5, 2021). The prison houses 1,227 inmates. *FCI Milan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/caa/ (last visited Jan. 5, 2021).

Furthermore, the court has few assurances that early release will reduce Defendant's chances of contracting COVID-19 or increase his chances of successful recovery. Given his long history of failing to comply with basic rules and societal expectations, even when violations carry significant jail time, release may not substantially reduce his risk of exposure. *See How to Protect Yourself & Others*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Jan. 5, 2021) (suggesting voluntary precautions to mitigate the spread of COVID-19). In addition, the court has little information or assurance as to the healthcare Defendant would receive in free society. Defendant may well have *less* monitoring and *reduced* access to quality care.

To release Defendant, the court would need to speculate as to whether he will contract COVID-19 in prison, whether he will develop serious symptoms, and whether his health, and access to quality healthcare, will improve upon release. Ultimately, the risks to Defendant of COVID-19 while incarcerated does not outweigh the several §

11

3553(a) factors that weigh in favor of continued confinement. Defendant's request for compassionate release will be denied. Accordingly,

IT IS ORDERED that Defendant's "Motion to Reduce Sentence" (ECF No. 1875) is DENIED.

                                         s/Robert H. Cleland               /
                                         ROBERT H. CLELAND
                                         UNITED STATES DISTRICT JUDGE

Dated: January 22, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 22, 2021, by electronic and/or ordinary mail.

                                         s/Lisa Wagner                    /
                                         Case Manager and Deputy Clerk
                                         (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\11-20551.GIBSON.MotiontoReduceSentence.RMK.RHC.docx