# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      Case No. 11-20551

JAMALL GIBSON,

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION
## FOR RECONSIDERATION AND DENYING DEFENDANT'S
## SECOND MOTION TO REDUCE SENTENCE

Defendant Jamall Gibson pleaded guilty to conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), (b)(1)(C). (ECF No. 1088, PageID.5963.) On May 8, 2015, the court sentenced him to 151 months imprisonment. (*Id.*, PageID.5964.) His projected date of release, assuming good behavior, is in April 2026. (ECF No. 1898-2, PageID.19428.)

Defendant first filed a "Motion to Reduce Sentence" in September 2020. (ECF No. 1875.) He argued that the health risk presented by the Coronavirus Disease ("COVID-19") at his location of confinement, FCI Milan, warranted compassionate release under 18 U.S.C. § 3582(c)(1)(A). Even after assuming that Defendant's risk of contracting COVID-19 represented an "extraordinary and compelling reason" for Defendant's release, this court examined the applicable sentencing factors 18 U.S.C. § 3582(c)(1)(A) and concluded that Defendant's release was "not warranted." (*See* ECF No. 1925.) Defendant now seeks reconsideration of this decision. (ECF No. 1931.) And,

Defendant has also filed, pro se, a second "Motion to Reduce Sentence[,]" arguing he should be released so he can serve as a caregiver for his son. (ECF No. 1942.)

The federal compassionate release statute has "three substantive requirements." *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021). First, the court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Second, the sentencing factors provided under 18 U.S.C. § 3553(a) must weigh in favor of a sentence reduction. Third, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

A motion requesting a prisoner's compassionate release may be filed either by the Bureau of Prisons ("BOP") or by the prisoner himself. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit held in *United States v. Jones*, 980 F.3d 1098, 1110-11 (6th Cir. 2020), that when a prisoner moves for compassionate release himself there is no "applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, when a prisoner moves for compassionate release, the requirement in § 3582(c)(1)(A) that a sentence reduction be "consistent with [a] policy statement[]" does not apply, and courts are to ignore it. *Jones*, 980 F.3d at 1111; *accord United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021). To obtain compassionate release, a prisoner must nevertheless present "extraordinary and compelling" circumstances and must have § 3553(a)'s sentencing factors that weigh in his favor. 18 U.S.C. § 3582(c)(1)(A); *see Jones*, 980 F.3d at 1108, 1111 (holding that a court has "full discretion to define 'extraordinary and compelling'" and must also "determine whether, in its discretion, [a] reduction . . . is warranted" under § 3553(a)).

## I. Motion for Reconsideration

First, the court will address Defendant's motion for reconsideration of the court's January 2021 opinion denying Defendant's first motion for compassionate release. (*See* ECF No. 1931.) To prevail on a motion for reconsideration, Defendant "must not only demonstrate a palpable defect . . . but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3); see also *Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 924 (6th Cir. 2011) (explaining that this standard requires movant demonstrate both the "palpable defect" and "different disposition" elements). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Hawkins v. Genesys Health Sys.*, 704 F. Supp. 2d 688, 709 (E.D. Mich. 2010) (Borman, J.) (quoting *Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001) (Lawson, J.)).

Defendant fails to make even a substantial attempt at identifying a palpable defect but instead complains that the court did not assign enough weight to certain § 3553(a) factors. (*See, e.g.,* ECF No. 1931, PageID.19821 (arguing that a "palpable defect occurred by failing to give substantial weight [to] 18 U.S.C. § 3582(a)(2)(D)").) Precedent is clear that the court has "broad discretion" in weighing such § 3553(a) sentencing factors, so Defendant has failed to identify a palpable defect. *See United States v. Austin*, 825 F. App'x 324, 325 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)). Defendant's motion for reconsideration is simply another recitation of the arguments the court rejected in Defendant's first motion for compassionate release. *See, e.g., Settles v. Lafler*, No. 06-10496, 2008 WL 596881, at

3

*1 (E.D. Mich. Mar. 4, 2008) (Cohn, J.) (denying a motion for reconsideration where "[p]etitioner essentially repeats the arguments considered and rejected" in the original motion).

Even if, *arguendo*, the court assumed that Defendant had presented a valid argument for reconsideration, the broad availability of effective COVID-19 vaccines means that Defendant's risk of infection clearly does not represent an extraordinary and compelling reason for release. *See* 18 U.S.C. § 3582(c)(1)(A). "Extraordinary" is defined as "exceptional to a very marked extent." *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Compelling*, Webster's Third International Dictionary, Unabridged (2020). Courts have interpreted "extraordinary" in the context of compassionate release as "beyond what is usual, customary, regular, or common," and a "'compelling reason" as "one so great that irreparable harm or injustice would result if the relief is not granted." *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (Leitman, J.); *United States v. Murphy*, Case No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020) (Cox, J.).

On April 28, 2021, the BOP offered Defendant a COVID-19 vaccine. In a signed statement, he refused to receive the Moderna vaccine. (ECF No. 1948, PageID.19947.) Available scientific evidence demonstrates that the currently authorized vaccines are extraordinarily effective at reducing the risk of COVID-19 infection. *See, e.g., Moderna COVID-19 Vaccine Overview and Safety*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html

(last visited June 14, 2021) (noting that the Moderna vaccine was "94.1% effective at preventing laboratory-confirmed COVID-19 illness"); Mark G. Thompson et al., *Interim Estimates of Vaccine Effectiveness* (2021) (finding that mRNA vaccines, such as the Pfizer and Moderna vaccines, are 90% effective at preventing both asymptomatic and symptomatic COVID-19 infections). The court is aware of no scientifically derived evidence showing that there is a material risk of severe complications or death from COVID-19 to fully vaccinated individuals.

The court does not find that the existence of COVID-19, and the possibility Defendant could contract the disease in the future, present extraordinary and compelling circumstances. 18 U.S.C. § 3582(c)(1)(A). Defendant was given the opportunity to receive a safe, effective, and reliable vaccine, and he refused. Centers for Disease Control and Prevention, *supra*; Thompson et al, *supra*. (ECF No. 144-1, PageID.1565.)

Defendant does not convincingly establish that his conditions are exceptional and demand immediate release when he intentionally prevents prison officials from mitigating dangers to his health and safety. 18 U.S.C. § 3582(c)(1)(A). A prisoner will not be heard to complain of the risk of severe illness while he simultaneously avoids basic, sensible precautionary measures such as vaccination. Allowing a prisoner to qualify for compassionate release in the face of his refusal to receive a COVID-19 vaccine would serve to discourage prisoners from becoming vaccinated. This court is exceedingly hesitant to provide prisoners an incentive to *increase* their risk of contracting COVID-19 and developing severe symptoms. Such a result would be plainly counter-productive and dilute the ameliorative purposes of compassionate release.

Consistent with this reasoning, courts have regularly denied motions for compassionate release on the basis of COVID-19 when prisoners have declined to receive a COVID-19 vaccine. *See*, *e.g.*, *United States v. Toney*, Case No. 17-20184, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.) ("Courts in this circuit have consistently refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine."); *United States v. Carter,* Case No. 13-20422, 2021 WL 1310784, at *3 (E.D. Mich. Apr. 8, 2021) (Murphy, J.) (holding that a prisoner did not present extraordinary or compelling circumstances where the prisoner "declined to receive the COVID-19 vaccine"); *United States v. Cohen*, Case No. 09-20326, 2021 WL 1575300, at *2 (E.D. Mich. Apr. 22, 2021) (Edmunds, J.) ("The Court agrees with courts that have found that access to the vaccine mitigates the health concerns that may otherwise constitute extraordinary and compelling reasons in light of the pandemic."); *United States v. MacGregor*, Case No. 15-20093, 2021 WL 1378786, at *1 (E.D. Mich. Apr. 12, 2021) (Leitman, J.) (holding that a prisoner "failed to show that there were extraordinary and compelling reasons justifying his release because a COVID-19 vaccine had been offered to him, and he declined to take the vaccine").

Furthermore, and despite Defendant's choice to refuse a COVID-19 vaccine, prison authorities have substantially reduced the risk of spread and exposure to COVID-19 through the vaccination of other inmates. Defendant is confined at FCI Milan. Out of 1,270 inmates incarcerated at the prison, 562 are fully vaccinated. *FCI Milan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/mil/ (last visited June 15, 2021); *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 15, 2021). Consequently, there is

6

only a single active case of COVID-19 among inmates at FCI Milan. *COVID-19: Coronavirus*, *supra*.

In all, with Defendant refusing to receive a COVID-19 vaccine, there is no more than an exceedingly slim possibility that COVID-19 will spread through FCI Milan, that prison officials will then fail to contain the outbreak, that Defendant will contract COVID-19, and that he will subsequently develop life-threatening symptoms.

Such speculative possibilities of harm—almost entirely *avoidable* harm—do not justify the extraordinary remedy of early release from a proper sentence. 18 U.S.C. § 3582(c)(1)(A).

## II. Defendant's Second Motion for Compassionate Release

### A. Family Circumstances

Perhaps perceiving the weakness of his motion for reconsideration, Defendant has now filed a second motion for compassionate release. (ECF No. 1942.) Defendant now argues that both his 17-year-old son's need for a caretaker and a 2020 amendment to the Sentencing Commissions Guidelines for conspiracy convictions combined justify Defendant's compassionate release. The court finds that these new arguments do not represent extraordinary and compelling reasons for release, and therefore, the motion will be denied.

Defendant first claims that because his 17-year-old son has been diagnosed with "cardiomyopathy and arrhythmia" that Defendant should be released on the grounds that Defendant is the "sole person available to take care of his. . . son." (*Id.*, PageID.19911, 19931.) While the Sentencing Commission's policy statement on compassionate release is not binding, *see Jones*, 980 F.3d at 1110-11, the court will

look to the statement to help guide its analysis, see U.S.S.G. § 1B1.13. In the commentary to § 1B1.13, the Sentencing Commission defines one extraordinary and compelling reason as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 cmt. 1(C). It also provides that "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" represents a compelling reason for release. *Id.*

In the absence of a binding policy statement, district courts continue to "routinely den[y] motions for compassionate release when the defendants cannot show that they would be the only available caregiver of a minor child, even if their incarceration imposes substantial burdens on a spouse or co-parent to a minor child." *United States v. Cole*, No. 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021) (Goldsmith, J.) (citing *States v. Thornton*, No. 18-167-1, 2020 WL 4368155, at *5 n.10 (W.D. Pa. July 29, 2020); *United States v. Shine*, No. 14-0451, 2020 WL 3440654, at *3 (N.D. Tex. June 23, 2020)). *See also United States v. Corley,* No. 3:13-CR-00097-9, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) (citing *United States v. Lisi*, 440 F. Supp. 3d, 246, 252 (S.D.N.Y. 2020)) (noting that compassionate release based on "family circumstances. . . typically requires a finding that the Defendant is the only available caregiver").

The evidence presented by Defendant himself refutes his contention that he is the only available caregiver for his son. Defendant alleges no death or incapacitation of a caregiver, and while he asserts that he is the sole available caregiver, he also states in the same brief that his wife Crystal Gibson is caring for the couple's children while

maintaining a full-time job at Fiat-Chrysler. (ECF No. 1942, PageID.20011.) Defendant argues that he should be released so he can serve as the "sole. . . full-time caregiver" for his seventeen-year-old son who has a medical condition, but this wish does not change the fact that Defendant's wife already serves as a caregiver for her son, so Defendant by definition is not the "only available caregiver."[1] *See Cole*, 2021 WL 194194, at *2. The court finds that "[t]he hardship to [Defendant's] family that may result [from incarceration] is unfortunate, but not unusual." *Id.* Therefore, the "substantial burdens" imposed on Defendant's wife are insufficient to establish an extraordinary and compelling circumstance for Defendant's release.[2] *See id.*

## B. Reduced Sentence Guidelines

Defendant next argues that because of amendments in the U.S. Sentencing Commission's Guidelines that "if sentenced today in the wake of [the] Amendments" his advisory sentence "would [be] substantially lower." (ECF No. 1942, PageID.19909.) Defendant contends that this disparity represents an "extraordinary and compelling reason" for his sentence to be reduced through 18 U.S.C. § 3582(c)(1)(A). The court

---

[1] Nor does Defendant explain why his oldest child, who is now an adult, (*see* ECF No. 1948, PageID.19961) and who appears to still live at home with his mother and siblings, (*see* ECF No. 1942, PageID.19928) could not assist his sibling at least part-time.

[2] The court also notes that Defendant's contention that his son requires "around the clock care," (ECF No. 1960, PageID.20012) is not supported by the three letters Defendant has attached as exhibits to his own motion. (ECF No 1942, PageID.19923-31.) The family's letters suggest that the seventeen-year-old son continues to attend high school despite his heart condition. (*Id.*, 19923, 19927.) The letter provided by the son's doctor notes only that "[h]e will require frequent and long term follow ups for clinic visits and varying tests," and makes no mention of the need round-the-clock medical care. (*Id.*, 19931.) And, the son's letter also indicates he has been able to attend medical appointments "alone or with an extended family member," while Defendant's wife is at work. (*Id,* PageID.19923.) Although the situation may not be ideal, it is not a unique or unexpected consequence of a parent's incarnation.

need not determine whether Amendment 790, and the closely related Amendment 797, both cited by Defendant would actually result in a lower sentence because Defendant has waived his right to resentencing and, in any event, binding Sixth Circuit precedent makes clear that a compassionate release motion is not the proper vehicle for pursuing resentencing based on a non-retroactive change in the Sentencing Guidelines.

First, as pointed out by the government, Defendant in his plea agreement expressly waived "his right to be resentenced in the event the Sentencing Commission amends and makes retroactive any Guideline applicable to his sentencing." (ECF No. 761, PageID.3033.) This fact is likely irrelevant, however, because the Sentencing Commission did not list the cited amendments as applying retroactively. U.S.S.G. § 1B1.10. *See United States v. Valdivia-Perez*, No. CR 02-4107-MWB, 2018 WL 11202510, at *2 (N.D. Iowa May 29, 2018) (noting that "Amendment 790. . . [is] not [] made retroactive").[3]

Since the amendment cited by Defendant is non-retroactive, the Sixth Circuit has barred this court from considering the amendment to be an extraordinary and compelling reason for reducing a sentence under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Jarvis,* ___ F.3d ___, 2021 WL 2253235, at *3 (6th Cir. June 3, 2021) (citing *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021)) ("The text of these sentencing statutes does not permit us to treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as "extraordinary and compelling" explanations for a sentencing reduction."); *United States v. Wills*, 997

---

3   Defendant do not argue that the Amendment should be applied retroactively because it "clarifies a sentencing guideline, rather than substantively changes a guideline." *See Rivera v. Warden, FCI, Elkton*, 27 F. App'x 511, 515 (6th Cir. 2001).

F.3d 685, 688 (6th Cir. 2021) ("'[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced.' What the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012))). Precedent makes it clear that a compassionate release motion is not a way to bypass the normal rules regarding retroactivity, so the non-retroactive changes in sentencing guidelines relied on by Defendant are not grounds for relief. *See United States v. Logan*, No. 97-CR-00993-PJS-RLE, 2021 WL 1221481, at *6 (D. Minn. Apr. 1, 2021).

### C. Sentencing Factors

Even if Defendant were able to demonstrate extraordinary and compelling reasons for release, they do not outweigh the several § 3553(a) sentencing factors that weigh in favor of continued confinement. This court's January 2021 opinion, rejecting Defendant's initial motion for compassionate release, provided an extensive analysis of the applicable sentencing factors. The court found that:

- [T]he nature of his instant offense weigh strongly against early release. 18 U.S.C. § 3553(a)(1).
- An early release reducing the sentence by more than five years would not adequately reflect the seriousness of Defendant's criminal conduct. 18 U.S.C. § 3553(a)(2)(A). . . [and] early release would not afford just punishment for Defendant's serial lawbreaking. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A).
- [T]hat reducing Defendant's sentence by over five years would not afford adequate deterrence, either for Defendant or for others who may consider replicating his actions. 18 U.S.C. § 3553(a)(2)(B); 18 U.S.C. § 3582(c)(1)(A)
- Defendant's immediate release would not adequately ensure the protection of the public. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3582(c)(1)(A).
- The established sentencing range weighs strongly against Defendant's immediate release. 18 U.S.C. § 3553(a)(4)

(ECF No. 1925, PageID.19786-91.) "[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)). For the reasons articulated in its January 2021 opinion, the court finds that Defendant's new reasons for release do not outweigh the several § 3553(a) factors that weigh in favor of continued confinement. Accordingly,

IT IS ORDERED that Defendant's "Motion for Reconsideration" (ECF No. 1931) is DENIED.

IT IS ORDERED that Defendant's "Motion for Sentence Reduction" (ECF No. 1942) is DENIED.

                                               s/Robert H. Cleland               /
                                               ROBERT H. CLELAND
                                               UNITED STATES DISTRICT JUDGE

Dated: June 22, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 22, 2021, by electronic and/or ordinary mail.

                                               s/Lisa Wagner                   /
                                               Case Manager and Deputy Clerk
                                               (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Criminal\11-20551.GIBSON.MotiontoReduceSentence.AAB.docx