UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>JAMALL GIBSON,<br><br>　　Defendant. | Case No. 11-20551<br>Honorable Laurie J. Michelson |

**ORDER ON DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE [2113]**

Jamall Gibson was a participant in an extensive health care fraud conspiracy. He "agree[d] with others to utilize nominee patients to attend 'patient parties' . . . in order to obtain prescriptions for Oxycontin pills and other medically unnecessary controlled substances which were thereby diverted for illegal street sales in Detroit, Michigan and elsewhere." (ECF No. 761, PageID.3028.) In May 2015, after pleading guilty to conspiracy to distribute and possession with intent to distribute controlled substances, Gibson was sentenced to 151 months' incarceration and three years of supervised release. (ECF No. 1088.) Following an amendment to the sentencing guidelines, Gibson's sentence was reduced to 135 months. (ECF No. 2077.) In 2022, Gibson was placed on home confinement under the CARES Act, where he served the remainder of his custodial sentence, and on April 19, 2024, he began his term of supervised release. (ECF No. 2113, PageID.21956; ECF No. 2116, PageID.21972.)

Gibson has made positive strides in his rehabilitation, in reconnecting with his family, and in reintegrating into society since his release from prison. Gibson reports that he has fully complied with his conditions of supervision, maintained stable employment, completed 110 hours of community service at Greater Apostolic Church, and reestablished strong ties with his wife and children. (ECF No. 2113, PageID.21957–21958.) Given his progress, and in order to travel more freely for charity work and his children's sporting events, Gibson seeks early termination of his supervised release. (*Id*; ECF No. 2117, PageID.21983.)

The government opposed the request. (ECF No. 2116.) It contends that Gibson's compliance with the terms of his supervised release is not "exceptionally good behavior" warranting early termination. (ECF No. 2116, PageID.21974–21975.) But exceptional performance is no longer the standard in this Circuit. And the Sentencing Commission has recently proposed amendments that encourage early termination of supervision in appropriate cases to help ensure that resources are allocated to the individuals most in need of continued supervision and that the term is "sufficient, but not greater than necessary" to fulfill the purposes of imposing supervision.[1] The Court finds this to be such a case.

---

[1] The proposed amendment to U.S.S.G. § 5D1.4, application note 1(B), states: "*Early Termination.*—When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of

2

## I.

After a defendant has served at least one year, the court may terminate a term of supervised release if it is satisfied that termination is "warranted by the conduct of the defendant" and in the "interest of justice." 18 U.S.C. § 3583(e)(1). "The conjunction 'and' used in the statute clearly indicates that a district court must conclude that the early termination of supervised release is warranted both by the individual's conduct and also by the interest of justice." *United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003). In making this determination, the statute directs the court to consider many of the same § 3553(a) factors that were considered in imposing the initial sentence, including the nature and circumstances of the offense, the defendant's history and characteristics, deterrence, protection of the public, and the need to provide the defendant with training, medical care, or other correctional treatment. *Id*. The Sixth Circuit has recently ruled that "§ 3583(e)(1) does not require a finding of exceptionally good behavior before a district court may grant a motion for early termination of supervised release, though such behavior remains a relevant consideration." *United States v. Hale*, 127 F.4th 638, 642 (6th Cir. 2025).

---

supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant." U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines* (amended Apr. 30, 2025, effective Nov. 1, 2025).

## II.

Not only has Gibson served more than a year of his term of supervised release, but he has been out of prison since February 16, 2022, when he was released under the CARES Act. He has successfully reunited with his wife and six children, remained drug and crime free, paid his financial penalties, and complied with his supervision conditions. Gibson has also maintained steady employment with Faygo Beverages, completed over 100 hours of community service, and has been asked to become a member of the Brotherhood Against Drugs program in Lansing.

The Court has conferred with Gibson's supervising probation officer, who has no objection to Gibson's early termination from supervision. She confirms Gibson's compliance with his conditions of supervision and lack of any new criminal activity. She also advises that Gibson's Post Conviction Risk Assessment is low-risk such that he requires minimal supervision.

The Court has also conferred with the government and understands its apprehension over Gibson's request. (ECF No. 2116.) The underlying offense was very serious and caused significant harm to the communities into which the drugs were diverted. But Gibson is no longer the immature 27-year-old who participated in the conspiracy. Now 43, he has spent many years in prison separated from his family and has experienced all the consequences that punishment brings. He completed a drug program and other programming and has continued his rehabilitation since his release three years ago. This will all help with deterrence, protection of the public, and promoting respect for the law. And Gibson's criminal history is not extensive. As

a teenager, he was convicted of an offense involving a stolen car, and then, in his 20s, one conviction involving possession of Oxycodone pills with his father-in-law (also a defendant in this underlying case) and one disturbing animal cruelty offense when he and his wife left a home they had been living in and failed to check on the dogs left behind for at least five days. (Presentence Report, ¶¶ 32–35.) And while Gibson was on one-year non-reporting supervision for that offense when he committed the underlying offense, he has now shown he can successfully complete more than one year of supervision.

In short, when the Court considers Gibson's progress in the few years since his release from prison, his commitment to being the father his children need, and probation's belief that he can be successful without continued supervision, the relevant sentencing factors under 18 U.S.C. § 3553(a) do not preclude early termination of Gibson's supervised release. And this will allow the family to remain together while some of the Gibson children travel out of District for athletic competitions. *See United States v. Tomey*, No. 15-060, 2023 U.S. Dist. LEXIS 13912, at *4–5 (N.D. Fla. Jan. 27, 2023) (granting early termination of supervised release where defendant was in the community for two years following his release under the CARES Act before serving one year of supervised release and concluding that "given [his] otherwise successful reintegration into society, continued supervision would not further the sentencing purposes of 18 U.S.C. § 3553(a)").

Thus, Gibson's motion for early discharge of supervised release (ECF No. 2113) is GRANTED.

5

SO ORDERED.

Dated: June 3, 2025

                              s/Laurie J. Michelson
                              LAURIE J. MICHELSON
                              UNITED STATES DISTRICT JUDGE